**FILED**

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS MAY 1 9 2005 WH
### EASTERN DIVISION

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| ROBERT STEIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 04 C 6968 |
| | ) | |
| UNUM PROVIDENT INSURANCE | ) | |
| COMPANY OF AMERICA, | ) | |
| STEVE FOREMAN, and | ) | |
| PROSOURCE FINANCIAL, LLC, | ) | Magistrate Judge Mason |
| | ) | |
| Defendants. | ) | |

## NOTICE OF FILING

TO:  Sonia V. Odarczenko          Michael J. Smith
     Claussen Miller              Steven R. McMannon
     10 S. LaSalle Street         Michael J. Smith & Associates
     Chicago, IL 60603            39 S. LaSalle Street, Suite 305
                                  Chicago, IL 60603

PLEASE TAKE NOTICE that on May 19th, 2005, we filed the attached **PLAINTIFF'S FIRST AMENDED COMPLAINT** in the United States District Court, Northern District of Illinois, Eastern Division, Dirksen Building, Chicago, IL, a copy of which is hereby served upon you.

## CERTIFICATE OF SERVICE

I, Steven K. Jambois, hereby certify that on May 19th, 2005, I caused a copy of this document to be served via U.S. mail upon the above named parties.

Kralovec, Jambois & Schwartz
60 W. Randolph St.
Chicago, IL 60601
312-782-2525

## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**FILED**

MAY **1 9** 2005 WH

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| **ROBERT STEIN,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 04 C 6968 |
| | ) |
| **UNUM PROVIDENT INSURANCE** | ) Magistrate Judge Michael Mason |
| **COMPANY OF AMERICA,** | ) |
| **STEVE FOREMAN, and** | ) |
| **PROSOURCE FINANCIAL, LLC.,** | ) |
| | ) |
| Defendants. | ) |

### FIRST AMENDED COMPLAINT

**NOW COMES** the Plaintiff, **ROBERT STEIN,** by and through his attorneys, Steven K.

Jambois of KRALOVEC, JAMBOIS & SCHWARTZ, and complains of the Defendants, UNUM

PROVIDENT INSURANCE COMPANY OF AMERICA, STEVE FOREMAN, AND

PROSOURCE FINANCIAL, LLC. He states as follows:

### STATEMENT OF FACTS

1.     In 1989, and at all relevant times, Plaintiff, Robert Stein (hereinafter "Stein") was a

licensed accountant and principal of the firm Garen & Associates.

2.     In 1989, and at all relevant times, Unum Provident Insurance Company of America

(hereinafter "Unum") is an insurance company that provides insurance benefits, including disability

benefits to insured parties in consideration of paid premiums.

3.     In 1989, Stein discussed purchasing a disability policy for himself with ProSource

Financial, LLC, though its agent Steve Foreman (hereinafter "Foreman") a licensed Illinois

insurance agent. Stein sought a disability policy in which his disability benefits would be based on

his annual cash flow earnings rather than his W-2 and K-1 schedules.

4.      In 1989, Foreman, on behalf of Stein, spoke to UNUM representative Pattie Lee. In Foreman's discussion with UNUM representative Pattie Lee, Ms. Lee agreed to base Stein's disability benefits upon his annual cash flow earnings rather than on his W-2 and K-1 schedules.

5.      In 1989, Stein, in furtherance of and in reliance on the representations of Foreman, had a discussion with UNUM representative Pattie Lee and informed her that the "typical" UNUM benefits plan based on W-2 and K-1 schedules would not suit his financial needs in the event of his disability, and that he sought to purchase a disability plan based upon his cash flow earnings.

6.      UNUM representative Pattie Lee agreed to base Stein's disability benefits on his annual cash flow earnings rather than on his W-2 and K-1 schedules. In furtherance of this agreement, Stein agreed to provide UNUM with an annual letter setting forth his cash flow earnings for the prior year.

7.      Based on this agreement with UNUM representative Pattie Lee, Stein purchased Policy NO. 34793 which was a long term disability policy from UNUM. In accordance with their agreement, Stein immediately provided documentation to UNUM showing his earnings of the last three years in order for UNUM to calculate Stein's monthly benefit should he become disabled.

8.      From 1990 thru 2003, Stein paid premium payments owed to UNUM for his long term disability policy.

9.      From 1990 thru 1998, Stein sent annual letters to UNUM regarding his cash flow earnings in furtherance of his agreement with UNUM for disability benefits based upon his cash flow earnings.

10.     Stein relied upon his agreement with UNUM that should he become disabled, he would receive disability payments from UNUM based on his cash flow earnings.

11.     That on or about in the year 1999, UNUM moved office locations.

12.     In 1999, UNUM representative Jennifer Doonan, contacted Stein and instructed Stein to send his annual letter regarding his cash flow earnings to UNUM at the new UNUM office location. Stein followed UNUM representative Jennifer Doonan's instruction and sent his annual letter reporting his cash flow earnings of the year 1998 to UNUM's new office location.

13.     From 1999 thru 2003, Stein continued to send annual letters to UNUM regarding his cash flow earnings for the previous year.

14.     Stein reasonably relied upon representations made to him by UNUM that in the event of his disability, he would receive disability benefits based upon his cash flow earnings rather than on his W-2 or K-1 schedules.

15.     In 2003, Stein made a claim for disability benefits under his plan stating that it was due to Multiple Sclerosis.

16.     Stein supported his claim for benefits with numerous medical records and reports from treating physicians showing that he was disabled.

17.     In spite of the agreement between UNUM and Stein, UNUM has unreasonably refused to pay Stein's disability benefits based upon his cash flow earnings and is now attempting to pay disability benefits based solely on Stein's W-2 and K-1 schedules which is contrary to the parties specific agreement.

18.     The determination by UNUM that Stein is not entitled to disability benefits based upon his cash flow earnings represents a unilateral breach of the parties thirteen year agreement and has no rational support in the evidence.

## COUNT I – BREACH of FIDUCIARY DUTY

Now comes Robert Stein and complains against Defendant UNUM LIFE INSURANCE COMPANY OF AMERICA, pleading hypothetically and in the alternative, states as follows:

19.     Plaintiff adopts and realleges Paragraphs 1-18 of the Factual Statement as Paragraphs 1-18 of Count I as fully set forth therein.

20.     In 1990, Stein purchased a long term disability policy from UNUM with the agreement that should he become disabled, UNUM would provide him with disability payments based on his cash flow earnings. Stein agreed to submit to UNUM annual documentation indicating his cash flow earnings based upon the prior year.

21.     UNUM was the Administrator of Stein's long-term disability policy and had control of the management and distribution, if necessary, of the funds to Stein. Stein was participant in the long term disability plan, and Stein would be considered a beneficiary of the plan should he become disabled within the meaning of ERISA 29 U.S.C. 1001 et. seq.

22.     As the Administrator of Stein's long-term disability policy, UNUM assumed certain fiduciary responsibilities including the obligation to abide by the terms of the agreement which provided that Stein's disability benefits would be calculated based upon his cash flow earnings should he become disable his K-1 and W-2 schedules.

23.     In 2003, Stein became disabled and was eligible for disability benefits under his UNUM Disability Policy.

24.     As of 2003, UNUM has refused to honor the terms of their agreement with Stein that his disability benefits would be calculated based upon his cash flow earnings should he become disabled. UNUM's refusal to honor the agreement constitutes a breach of the fiduciary duties owed to Stein in violation of 29 U.S.C. Sections 1109 (a), 1132 (a) (1)(b) and 1132 (a)(1)(b).

WHEREFORE, Plaintiff prays for the following relief:

a.     That the Court enter an order in plaintiff's favor and against the defendant and that the court order the defendant to pay disability income benefits to plaintiff as agreed upon by the

parties which is based upon the plaintiff's cash flow earnings.

 b. That the court order the Defendant to pay plaintiff prejudgement interest on all benefits that plaintiff is entitled to receive according to the terms of their agreement;

 c. That the Court order defendants to pay plaintiff's benefits until such time as the policy conditions for discontinuance apply;

 d. That the Court clarify Plaintiff's rights to future benefits under the terms of the plan;

 e. That plaintiff recover any and all other relief to which he may be entitled to receive as determined by the Court.

## COUNT II - EQUITABLE ESTOPPEL

Now comes, Robert Stein and complains against Defendant, UNUM LIFE INSURANCE COMPANY OF AMERICA, pleading hypothetically and in the alternative, states as follows:

 25. Plaintiff adopts and realleges Paragraphs 1-18 of the Factual Statement and Count I Paragraphs 19-24 of Count II as fully set forth.

 26. In 1990, UNUM employee Pattie Lee represented to Stein that she had authority to enter into an agreement with Stein for his disability benefits to be based upon his cash flow earnings rather than on his W2 or K-1 schedules as long as Stein annually submitted an annual letter to UNUM indicating his cash flow earnings for the previous year.

 27. In 1999, UNUM employee, Jennifer Doonan further cemented Stein's agreement with UNUM by directly contacting Stein and asking him to continue to send his annual letter regarding his cash flow earnings to UNUM at the new UNUM office location.

 28. Stein relied upon the representations made to him by UNUM employee, Pattie Lee, and each year submitted an annual statement showing his cash flow earnings to UNUM.

 29. Stein relied upon the further representations made to him by Jennifer Doonan and

continued to submit an annual statements to UNUM showing his yearly cash flow earnings.

30. Stein reasonably relied upon the statements of Pattie Lee and Jennifer Doonan. Stein did not obtain a different disability policy that would base his disability benefits on his cash flow earnings rather than on his W-2s and K-1 schedules, but instead chose to keep his disability policy with UNUM.

31. In 2003, Stein became disabled and was eligible for disability benefits under his UNUM Long Term Disability Policy.

32. As of 2003, UNUM has unreasonably refused to honor the terms of their agreement with Stein that his disability benefits would be calculated based upon his cash flow earnings should he become disabled.

WHEREFORE, the plaintiff prays for the following relief:

a. That the Court enter an order in plaintiff's favor and against the defendant and that the court order the defendant to pay disability income benefits to plaintiff as agreed upon by the parties which is based upon the plaintiff's cash flow earnings.

b. That the court order the Defendant to pay plaintiff prejudgement interest on all benefits that have occurred prior to the date of judgment;

c. That the Court order defendants to pay plaintiff's benefits until such time as the policy conditions for discontinuance apply;

d. That the Court clarify Plaintiff's rights to future benefits under the terms of the plan;

e. That plaintiff recover any and all other relief to which he may be entitled to receive as determined by the Court.

### COUNT III - FRAUD

Now comes, Robert Stein and complains against Defendants, UNUM LIFE INSURANCE COMPANY OF AMERICA, pleading hypothetically and in the alternative, states as follows:

33.    Plaintiff adopts and realleges Paragraphs 1-18 of the Factual Statement, Count I Paragraphs 19-24 and Count II Paragraphs 25- 32 as fully set forth.

34.    In 1990, UNUM employee Pattie Lee represented to Stein that she had authority to enter into an agreement with Stein for his disability benefits to be based upon his cash flow earnings rather than on his W2 or K-1 schedules as long as Stein annually submitted an annual letter to UNUM indicating his cash flow earnings for the previous year and that such a plan would be valid.

35.    That UNUM employee, Pattie Lee, made the aforementioned misrepresentations knowing that it was false and that UNUM would not base Stein's disability benefits on his cash flow earnings but rather on his W-2s and K-1 schedules should he later become disabled.

36.    In 1999, UNUM employee, Jennifer Doonan directly contacted Stein and asked him to continue to send his annual letter regarding his cash flow earnings to UNUM at the new UNUM office location.

37.    That UNUM employee, Jennifer Doonan, made the aforementioned contact with Stein knowing that her renewed request was false and that UNUM would not base Stein's disability benefits on his cash flow earnings but rather on his W-2s and K-1 schedules should he later become disabled.

38.    Stein relied upon the misrepresentations of Pattie Lee and Jennifer Doonan because he did not obtain a different disability policy that would base his disability benefits on his cash flow earnings rather than on his W-2s and K-1 schedules.

39.    As a direct and proximate result of the knowing misrepresentations by UNUM employees Pattie Lee and Jennifer Doonan, Plaintiff was financially injured and is now forced to

litigate his entitlement to disability benefits based upon his cash flow earnings which had been agreed upon by the parties.

WHEREFORE: Plaintiff prays for the following relief:

a.     That the Court enter an order in plaintiff's favor and against the defendant and that the court order the defendant to pay disability income benefits to plaintiff as agreed upon by the parties which is based upon the plaintiff's cash flow earnings.

b.     That the court order the Defendant to pay plaintiff prejudgement interest on all benefits that have occurred prior to the date of judgment;

c.     That the Court order defendants to pay plaintiff's benefits until such time as the policy conditions for discontinuance apply;

d.     That plaintiff recover any and all other relief to which he may be entitled to receive as determined by the Court.

## COUNT IV - NEGLIGENT MISREPRESENTATION

Now comes, Robert Stein, by his undersigned attorneys, and complaining of Defendant, STEVE FOREMAN, pleading hypothetically and in the alternative, states as follows:

40.     Plaintiff adopts and realleges Paragraphs 1-18 of the Factual Statement, Count I Paragraphs 19-24, Count II Paragraphs 25- 32 and Count III Paragraphs 33-39 as fully set forth.

41.     That at all relevant times, Defendant FOREMAN, was a duly licensed Illinois insurance agent and resident of Illinois.

42.     That at all relevant times, FOREMAN, was acting as an agent, servant, and/or employee of PRO SOURCE FINANCIAL, LLC. and was acting within the scope of his employment as an agent, servant, and of employee of PROSOURCE FINANCIAL, LLC while negotiating an insurance contract with UNUM on behalf of Stein.

43. At all relevant times, FOREMAN owed a duty to Stein to exercise the care and skill of a reasonably well qualified insurance agent.

44. Notwithstanding the duties and responsibilities owed by FOREMAN to Stein, FOREMAN breached these duties in one or more of the following ways:

a. Failed to adequately research, investigate, and negotiate the insurance contract that he procured on behalf of Stein in 1989 with UNUM that allowed for Stein's disability benefits to be based on his cash flow earnings.

b. Failed to properly research, investigate, negotiate, and understand the consequences of the provisions of the Contract entered into by Stein with UNUM;

c. Failed to notice and correct the ambiguity of the Contract:

d. Failed to know that the insurance contract entered into by Stein with UNUM required Stein to furnish his K-1 and W-2 forms to compute Stein's disability benefits after 1990.

e. Failed to advise and warn Stein of the insufficient disability benefits he would receive under the insurance contract; and

f. Was otherwise negligent in the investigation, negotiation, research, preparation, and gave advice with misrepresentations to Stein prior to and during the signing of the insurance contract between Stein and UNUM.

45. FOREMAN'S negligent misrepresentations to Stein directly and indirectly caused:

a. Stein to receive a much lower disability benefit than he would have received but for the negligent misrepresentations made to him by Foreman;

b. Stein to hire an attorney and incur expenses to file and prosecute this lawsuit.

WHEREFORE, the Plaintiff respectfully requests that this Court enter judgment against the Defendant, FOREMAN, for negligent misrepresentation and access the damages as follows:

1.     That the Court enter judgment in plaintiff's favor and against the defendant and that the court order the defendant to pay disability income benefits to payment as agreed upon by the agreement procured by Defendant;

2.     That the court order Defendant to pay plaintiff prejudgment interest on all benefits that have accrued prior to the date of judgment;

3.     All costs incurred in litigating this action:

4.     All further relief as this Court deems fair and reasonable.

## COUNT V- FRAUD

Now comes, Robert Stein, by his undersigned attorneys, and complaining of Defendant, STEVE FOREMAN, pleading hypothetically and in the alternative, states as follows:

46.     Plaintiff adopts and realleges Paragraphs 1-18 of the Factual Statement, Count I Paragraphs 18-24, Count II Paragraphs 25-32, Count III Paragraphs 33-39 and Count IV Paragraphs 40-45 as fully set forth.

47.     In 1989, FOREMAN represented to Stein that he entered into an agreement on behalf of Stein with UNUM, for his disability benefits to be based upon his cash flow earnings rather than on his W2 or K-1 schedules.

48.     That FOREMAN made the aforementioned misrepresentations knowing that it was false and that UNUM would not base Stein's disability benefits on his cash flow earnings but rather on his W-2s and K-1 schedules should he later become disabled.

49.     Stein relied upon the misrepresentations of FOREMAN because he did not obtain a different disability policy that would base his disability benefits on his cash flow earnings rather than on his W-2s and K-1 schedules.

50.     As a direct and proximate result of the knowing misrepresentations by

FOREMAN, Plaintiff was financially injured and is now forced to litigate his entitlement to disability benefits based upon his cash flow earnings which had been agreed upon by the parties.

WHEREFORE: Plaintiff prays for the following relief:

a.      That the Court enter an order in plaintiff's favor and against the defendant and that the court order the defendant to pay disability income benefits to plaintiff as agreed upon by the parties which is based upon the plaintiff's cash flow earnings.

b.      That the court order the Defendant to pay plaintiff prejudgement interest on all benefits that have occurred prior to the date of judgment;

c.      That the Court order defendants to pay plaintiff's benefits until such time as the policy conditions for discontinuance apply;

d.      That plaintiff recover any and all other relief to which he may be entitled to receive as determined by the Court.

## COUNT VI - NEGLIGENT MISREPRESENTATION

Now comes, Robert Stein, by his undersigned attorneys, and complaining of Defendant, PRO SOURCE FINANCIAL, LLC. by and through its agent, STEVE FOREMAN, pleading hypothetically and in the alternative, states as follows:

51.     Plaintiff adopts and realleges Paragraphs 1-18 of the Factual Statement, Count I Paragraphs 18-24, Count II Paragraphs 25- 32, Count III Paragraphs 33-39, Count IV Paragraphs 40-45 and Count V Paragraphs 46-50 as fully set forth.

52.     That at all relevant times, Defendant PRO SOURCE FINANCIAL, LLC, was a company located and licensed to do business in the state of Illinois.

53.     That at all relevant times, Defendant, PROSOURCE FINANCIAL, LLC, by and through its agents, servants, and/or employees including but not limited to FOREMAN,

negotiated an insurance contract with UNUM on behalf of Stein.

54. At all relevant times, Defendant, PROSOURCE FINANCIAL, LLC, by and through its agents, servants, and/or employees including but not limited to FOREMAN, owed a duty to Stein to exercise the care and skill of a reasonably well qualified insurance agency.

55. Notwithstanding the duties and responsibilities owed by PRO SOURCE FINANCIAL, LLC Defendant, PROSOURCE FINANCIAL, LLC, breached these duties in one or more of the following ways:

a. Failed to adequately research, investigate, and negotiate the insurance contract that he procured on behalf of Stein in 1989 with UNUM that allowed for Stein's disability benefits to be based on his cash flow earnings.

b. Failed to properly research, investigate, negotiate, and understand the consequences of the provisions of the Contract entered into by Stein with UNUM;

c. Failed to notice and correct the ambiguity of the Contract:

d. Failed to know that the insurance contract entered into by Stein with UNUM required Stein to furnish his K-1 and W-2 forms to compute Stein's disability benefits after 1990.

e. Failed to advise and warn Stein of the insufficient disability benefits he would receive under the insurance contract; and

f. Was otherwise negligent in the investigation, negotiation, research, preparation, and gave advice with misrepresentations to Stein prior to and during the signing of the insurance contract between Stein and UNUM.

56. PROSOURCE FINANCIAL'S, LLC, negligent misrepresentations to Stein directly and indirectly caused:

a. Stein to receive a much lower disability benefit than he would have received but

for the negligent misrepresentations made to him by PROSOURCE FINANCIAL, LLC,;

b.      Stein to hire an attorney and incur expenses to file and prosecute this lawsuit.

WHEREFORE, the Plaintiff respectfully requests that this Court enter judgment against the Defendant, PROSOURCE FINANCIAL, LLC, for negligent misrepresentation and access the damages as follows:

1.      That the Court enter judgment in plaintiff's favor and against the defendant and that the court order the defendant to pay disability income benefits to payment as agreed upon by the agreement procured by Defendant;

2.      That the court order Defendant to pay plaintiff prejudgment interest on all benefits that have accrued prior to the date of judgment;

3.      All costs incurred in litigating this action:

4.      All further relief as this Court deems fair and reasonable.

## COUNT VII - FRAUD

Now comes, Robert Stein, by his undersigned attorneys, and complaining of Defendant, PRO SOURCE FINANCIAL, LLC., by and through its agent, STEVE FOREMAN, pleading hypothetically and in the alternative, states as follows:

57.      Plaintiff adopts and realleges Paragraphs 1-18 of the Factual Statement, Count I Paragraphs 18-24, Count II Paragraphs 25- 32, Count III Paragraphs 33- 39, Count IV Paragraphs 40-45, Count V Paragraphs 46-50 and Count VI Paragraphs 51-56 as fully set forth.

58.      In 1989, PRO SOURCE, by and through its agent, FOREMAN, represented to Stein that he entered into an agreement on behalf of Stein with UNUM, for his disability benefits to be based upon his cash flow earnings rather than on his W2 or K-1 schedules.

59.      That PRO SOURCE, by and through its agent, FOREMAN, made the

aforementioned misrepresentations knowing that it was false and that UNUM would not base Stein's disability benefits on his cash flow earnings but rather on his W-2s and K-1 schedules should he later become disabled.

60. Stein relied upon the misrepresentations of PRO SOURCE, by and through its agent, FOREMAN, because he did not obtain a different disability policy that would base his disability benefits on his cash flow earnings rather than on his W-2s and K-1 schedules.

61. As a direct and proximate result of the knowing misrepresentations by PRO SOURCE, by and through its agent, FOREMAN, Plaintiff was financially injured and is now forced to litigate his entitlement to disability benefits based upon his cash flow earnings which had been agreed upon by the parties.

WHEREFORE: Plaintiff prays for the following relief:

a. That the Court enter an order in plaintiff's favor and against the defendant and that the court order the defendant to pay disability income benefits to plaintiff as agreed upon by the parties which is based upon the plaintiff's cash flow earnings.

b. That the court order the Defendant to pay plaintiff prejudgement interest on all benefits that have occurred prior to the date of judgment;

c. That the Court order defendants to pay plaintiff's benefits until such time as the policy conditions for discontinuance apply;

d. That plaintiff recover any and all other relief to which he may be entitled to receive as determined by the Court.

## COUNT VIII - BREACH OF CONTRACT

Now comes, Robert Stein and complains against Defendants, UNUM LIFE INSURANCE COMPANY OF AMERICA, pleading hypothetically and in the alternative, states

as follows:

62.    Plaintiff adopts and realleges Paragraphs 1-18 of the Factual Statement, Count I Paragraphs 19-24,Count II Paragraphs 25- 32, Count III Paragraphs 33- 39, Count IV Paragraphs 40-45, Count V Paragraphs 46-50, Count VI Paragraphs 51-56 and Count VII Paragraphs 57- 61 as fully set forth.

63.    In 1990, Stein purchased a long term disability policy from UNUM with the agreement that should he become disabled, UNUM would provide him with disability payments based on his cash flow earnings. Stein agreed to submit to UNUM annual documentation indicating his cash flow earnings based upon the prior year.

64.    In accordance with their agreement, Stein immediately provided documentation to UNUM showing his earnings of the last three years in order for UNUM to calculate Stein's monthly benefit should he become disabled.

65.    From 1990 thru 2003, Stein paid premium payments owed to UNUM for his long term disability policy.

66.    From 1990 thru 1998, Stein sent annual letters to UNUM regarding his cash flow earnings in furtherance of his agreement with UNUM for disability benefits based upon his cash flow earnings.

67.    In 1999, UNUM representative Jennifer Doonan, contacted Stein and instructed Stein to send his annual letter regarding his cash flow earnings to UNUM at the new UNUM office location.  Stein followed UNUM representative Jennifer Doonan's instruction and sent his annual letter reporting his cash flow earnings of the year 1998 to UNUM's new office location.

68.    From 1999 thru 2003, Stein continued to send annual letters to UNUM regarding his cash flow earnings for the previous year.

15

69.     Stein relied upon representations made to him by UNUM that in the event of his disability, he would receive disability benefits based upon his cash flow earnings rather than on his W-2 or K-1 schedules.

70.     In 2003, Stein made a claim for disability benefits under his plan stating that it was due to Multiple Sclerosis.

71.     Stein supported his claim for benefits with numerous medical records and reports from treating physicians showing that he was disabled.

72.     In spite of the agreement between UNUM and Stein, UNUM has unreasonably refused to pay Stein's disability benefits based upon his cash flow earnings and is now attempting to pay disability benefits based solely on Stein's W-2 and K-1 schedules which is contrary to the parties specific agreement.

73.     The determination by UNUM that Stein is not entitled to disability benefits based upon his cash flow earnings represents a unilateral breach of the parties thirteen year agreement and has no rational support in the evidence.

74.     UNUM's breach of contract proximately caused damages to Stein.

WHEREFORE, the Plaintiff respectfully requests that this Court enter judgment against the Defendant, UNUM, for breach of contract and access the damages as follows:

1.      That the Court enter judgment in plaintiff's favor and against the defendant and that the court order the defendant to pay disability income benefits to payment as agreed upon by the agreement procured by Defendant;

2.      That the court order Defendant to pay plaintiff prejudgment interest on all benefits that have accrued prior to the date of judgment;

3.      All costs incurred in litigating this action:

4.   All further relief as this Court deems fair and reasonable.

Respectfully submitted,

KRALOVEC, JAMBOIS & SCHWARTZ

Steven K. Jambois

Steven K. Jambois -- 6182828
KRALOVEC, JAMBOIS & SCHWARTZ
60 West Randolph Street
Fourth Floor
Chicago, Illinois 60601

17